## MYERS *v.* READING COMPANY.

No. 367.   Argued February 6, 1947.—Decided June 2, 1947.

By special leave of Court, *B. Nathaniel Richter* argued the cause for petitioner, *pro hac vice.*   With him on the brief was *John H. Hoffman.*

*Henry R. Heebner* argued the cause for respondent. With him on the brief was *Wm. Clarke Mason.*

Mr. Justice Burton delivered the opinion of the Court.

This action for damages alleged to have been caused to the petitioner by the respondent's use, in violation of the Safety Appliance Acts,[1] of a railroad freight car not equipped with efficient hand brakes, presents the question whether the evidence at the trial, with the inferences that the jury justifiably could draw from it, was sufficient to support the verdict for the petitioner. We hold that it was.

The action was brought in the District Court of the United States for the Eastern District of Pennsylvania by the petitioner, John Myers, against his employer, the Reading Company. He claimed that he received personal injuries caused by the respondent's use in interstate commerce, in its railroad yards at Port Richmond, Philadelphia, of a freight car equipped with a defective hand brake in violation of the Safety Appliance Acts requiring such cars to be equipped with "efficient hand brakes."[2] At the close of the evidence, respondent moved for a directed verdict. The motion was not granted, and the jury returned a verdict for $5,000 in favor of the petitioner. The respondent then moved to have the verdict set aside and to have judgment entered in its favor.[3] On

---

[1] "Sec. 2. . . ., it shall be unlawful for any common carrier subject to the provisions of this Act [of April 14, 1910] to haul, or permit to be hauled or used on its line any car subject to the provisions of this Act not equipped with appliances provided for in this Act, to wit: All cars must be equipped with secure sill steps and *efficient hand brakes;* all cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards, and all cars having ladders shall also be equipped with secure hand holds or grab irons on their roofs at the tops of such ladders: . . . ." (Italics supplied.) 36 Stat. 298, 45 U. S. C. § 11.

[2] See note 1, *supra.*

[3] "Rule 50. Motion for a Directed Verdict.

"(b) Reservation of Decision on Motion. . . . Within 10 days after the reception of a verdict, a party who has moved for a directed

December 28, 1945, this motion was granted and judgment was so entered. 63 F. Supp. 817. On May 29, 1946, the Circuit Court of Appeals for the Third Circuit affirmed the judgment, *per curiam.* 155 F. 2d 523. We granted certiorari in order to review this procedure, in a case based upon a violation of the Safety Appliance Acts, in the light of our decision rendered on March 25, 1946, in *Lavender* v. *Kurn,* 327 U. S. 645, subsequent to the trial of this case.

The petitioner testified to the following:

On June 11, 1944, he was working for the respondent as a freight conductor in charge of a crew consisting of an engineer, a fireman and two brakemen. He had been employed by the respondent for six or seven years, rising from the rank of crossing watchman to that of conductor and, for five or six months immediately preceding June 11, he had worked practically every day in the job in which he was engaged when injured. At about nine o'clock that evening his crew moved a string of seven coal cars on to a yard track where the crew coupled those cars to three others. One of the brakemen, new on the job that day, made the coupling and the petitioner directed him "to tie the handbrakes on"—that is, to tighten them so as to insure against further movements of the cars on the slightly graded track. The brakeman did this, but before the petitioner left the cars he checked them over and saw that the brakes were not all on, because one brake chain, instead of being wrapped around the shaft, was hanging loose. He climbed up on the brake platform, eight feet above the ground, on the car where the hand brake was

verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; . . . . If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. . . ." Federal Rules of Civil Procedure.

not set, and tried to set it by turning the brake wheel. While doing this, he carried his signaling lantern on his left arm with his hand through the handle. As to the condition and operation of the brake he testified:

"A. I was tightening the brake—it was kind of stiff and sticking—it was pretty hard to signal with the one hand and to get the brake on.

"Q. With the ordinary brake wheel, do you have the difficulty that you had with this wheel?

"A. Not ordinarily.

"Q. What was the difference between this wheel and the ordinary wheel?

"A. It was kind of stiff, and like a spring—like a shoe kicking back.

"Q. And you started to try to set it?

"A. That is right.

.    .    .    .    .

"A. As I was tightening the brake—just that quick—I felt something like the slack being run out, getting ready to uncouple.

"Q. What did you feel on your car?

"A. A quick jar, and I took this hand to signal 'stop.' (Indicating.)

"Q. What did you signal?

"A. I signaled 'stop' the best I could and hold on, but I went down; I lost my hold and down I went.

"Q. What happened to the wheel on the hand-brake while you were holding the wheel?

"A. That kicked back.

"Q. What do you mean by that?

"A. I was putting it on this way (indicating), and it kicked right back off.

"Q. Could you hold it?

"A. No, I couldn't.

"Q. Was it pulled all the way on?

"A. Oh, no.

"Q. What happened to you?

"A. Down I went." [4]

The jury found, in a special verdict, that the brake was not an efficient brake; that its inefficiency contributed to or caused injuries to the petitioner; that the train did not move after the seven shifted cars were coupled to the three standing cars; and that the petitioner was not thrown from a moving train.[5]    The jury thus reached factual conclusions supporting its general verdict for the petitioner, and reducing the legal basis for recovery to the respondent's use of a car not equipped with efficient hand brakes.

[4] Further testimony stated that his injuries were due to this fall. Other testimony supported the petitioner's claim, under the Federal Employers' Liability Act, 35 Stat. 65, 53 Stat. 1404, 45 U. S. C. § 51, that the respondent was negligent in moving the train while the petitioner was trying to tighten the brake and without any direction from him.    This charge, however, was disposed of by the special verdict of the jury, stating that the train did not move, thus strengthening the probative force of the testimony that the petitioner's fall was caused by the stiffness and kickback of the brake.

[5] The special verdict was as follows:

"1. Was the brake in question an efficient brake?

Answer 'yes' or 'no.'    [Answer] No.

"2. If you find that the brake in question was not an efficient brake, did that fact contribute to or cause any injuries to the plaintiff?

Answer 'yes' or 'no.'    [Answer] Yes.

"3. Did the train move after the seven shifted cars were coupled to the three standing cars?

Answer 'yes' or 'no.'    [Answer] No.

"4. If you find that the train moved after the cars were coupled, did that fact contribute to or cause any injuries sustained by the plaintiff?

Answer 'yes' or 'no.'    [Answer] No.

"5. Was the plaintiff thrown from a moving train?

Answer 'yes' or 'no.'    [Answer] No.

"6. Did the plaintiff become ill while walking on the ground, without having been thrown from the train?

Answer 'yes' or 'no.'    [Answer] No."

The only question before us is whether there was sufficient probative evidence, with the inferences that the jury could draw from it, to support the verdict for the petitioner.

There was an absolute and unqualified prohibition against the respondent's using or permitting to be used, on its line, any car not equipped with "efficient hand brakes." [6] In speaking of a like prohibition, imposed by the same Section of the Safety Appliance Acts, against the use of any car not equipped with "secure hand holds or grab irons," Mr. Chief Justice Hughes said:

"This final question must be determined in the light of the nature of the obligation resting upon the carrier in relation to the use of a defective car. The statutory liability is not based upon the carrier's negligence. The duty imposed is an absolute one and the carrier is not excused by any showing of care however assiduous." *Brady* v. *Terminal R. Assn.,* 303 U. S. 10, 15, and cases there cited.

See also, *Atlantic City R. Co.* v. *Parker,* 242 U. S. 56, 59 (automatic couplers required by 27 Stat. 531, 45 U. S. C. § 2); *Great Northern R. Co.* v. *Otos,* 239 U. S. 349, 351 (couplers); *Chicago, B. & Q. R. Co.* v. *United States,* 220 U. S. 559, 574–575; *St. Louis & Iron Mountain R. Co.* v. *Taylor,* 210 U. S. 281, 294–295 (couplers and drawbars); *Spotts* v. *Baltimore & O. R. Co.,* 102 F. 2d .160, 162 (hand brakes).

This simplifies the issue beyond that presented in the ordinary case under the Federal Employers' Liability Act where the plaintiff must establish the negligence of his employer. Here it is not necessary to find negligence. A railroad subject to the Safety Appliance Acts may be found liable if the jury reasonably can infer from the evidence merely that the hand brake which caused the

---

[6] See note 1, *supra.*

injuries was on a car which the railroad was then using on its line, in interstate commerce, and that the brake was not an "efficient" hand brake. Furthermore—

> "There are two recognized methods of showing the inefficiency of hand brake equipment. Evidence may be adduced to establish some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner." *Didinger* v. *Pennsylvania R. Co.,* 39 F. 2d 798, 799.

> "Proof of an actual break or visible defect in a coupling appliance is not a prerequisite to a finding that the statute has been violated. Where a jury finds that there is a violation, it will be sustained, if there is proof that the mechanism failed to work efficiently and properly even though it worked efficiently both before and after the occasion in question. The test in fact is the performance of the appliance. *Philadelphia & R. R. Co.* v. *Auchenbach,* 3 Cir., 16 F. 2d 550. Efficient means adequate in performance; producing properly a desired effect. Inefficient means not producing or not capable of producing the desired effect; incapable; incompetent; inadequate. . . .

> . . . the testimony of plaintiff that the brake was used in the normal and usual manner and failed to work efficiently but did so inefficiently, throwing him to the ground, is such substantial evidence of inefficiency as to make an issue for the jury. *Detroit, T. & I. R. Co.* v. *Hahn,* 6 Cir., 47 F. 2d 59. In other words, we cannot say as a matter of law that any and all inferences which the jury might reasonably draw from the evidence would support only a verdict for defendant and not one for plaintiff." *Spotts* v. *Baltimore & O. R. Co., supra,* at p. 162.

See also, *Wild* v. *Pitcairn*, 347 Mo. 915, 149 S. W. 2d 800; and *Newkirk* v. *Los Angeles Junction R. Co.*, 21 Cal. 2d 308, 131 P. 2d 535.

The inefficiency of the brake in this case may have consisted of its defective condition or its defective functional operation resulting, in either case, in its knocking from the brake platform an experienced railroad man attempting to tighten or set the brake in the customary manner described in his testimony. That testimony was not descriptive of precise mechanical defects in the structure of the brake. It was, however, simple and direct testimony from which a jury reasonably might infer the brake's defectiveness and its inefficiency in the sense necessary to establish a violation of the Safety Appliance Acts. After a brakeman had attempted to set all of the brakes, the chain on this brake still hung loose, indicating that it was not set. When the brake was partially tightened by an experienced freight conductor familiar with that kind of an operation, he found that it differed from the ordinary brake. He found that "it was kind of stiff, and like a spring—like a shoe kicking back." While he was holding the wheel, before it was "pulled all the way on," it "kicked back," he couldn't hold it, and "down" he went. This resulted in serious injuries to his hand and back. While different conclusions might be possible, the jury, which heard the testimony and saw the petitioner's illustrations of his handling of the brake, reasonably could infer from that evidence that the condition of this brake and its action were not those of an efficient hand brake.

The questions at issue were questions of fact. The jury was entitled to draw inferences from the evidence. From the evidence presented, the jury reasonably could find, as it did in its special verdict, (1) that the brake was not an efficient brake, and (2) that the fact that the brake was not an efficient brake contributed to or caused injury to the petitioner. In the face of this, the trial court erred

in entering a judgment for the respondent in accordance with the motion for a directed verdict.

The respondent is not subject, as has been suggested, to an absolute liability to its employees comparable to that established by a workmen's compensation law.[7] As an interstate common carrier, however, it is subject to liability for injuries to its employees resulting from its violation of its absolute duty to comply with the Safety Appliance Acts. The evidence here was sufficient to support the verdict for the petitioner, whether tested by the formula used by this Court in *Improvement Co.* v. *Munson,* 14 Wall. 442; *Slocum* v. *New York Life Ins. Co.,* 228 U. S. 364; *Tennant* v. *Peoria & P. U. R. Co.,* 321 U. S. 29; or *Lavender* v. *Kurn, supra.* The requirement is for probative facts capable of supporting, with reason, the conclusion expressed in the verdict.

> "Petitioner was required to present probative facts from which the negligence and the causal relation could reasonably be inferred. 'The essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.' *Galloway* v. *United States,* 319 U. S. 372, 395; . . . ." *Tennant* v. *Peoria & P. U. R. Co., supra,* at pp. 32–33.

See also, *Blair* v. *Baltimore & O. R. Co.,* 323 U. S. 600; *Brady* v. *Southern R. Co.,* 320 U. S. 476; *Pennsylvania R. Co.* v. *Chamberlain,* 288 U. S. 333, 343; *Western & A. R. Co.* v. *Hughes,* 278 U. S. 496; and *Baltimore & O. R. Co.* v. *Groeger,* 266 U. S. 521, 524.

> "Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury

---

[7] See *Griswold* v. *Gardner,* 155 F. 2d 333, 334, 337.

486

is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." *Lavender* v. *Kurn, supra,* at p. 653.

We believe that the evidence given at the trial, with the inferences that the jury justifiably could draw from it, was sufficient to support the verdict originally rendered for the petitioner. Accordingly, the judgment of the Circuit Court of Appeals sustaining the judgment entered for the respondent by the District Court is hereby

*Reversed.*