Mrs. Fern W. REUTER et al.,
Appellants,

v.

EASTERN AIR LINES, Inc.,
Appellee.

No. 15487.

United States Court of Appeals
Fifth Circuit.

Oct. 28, 1955.

**444**

John Samuel Tucker, Jr., Waites & Tucker, Birmingham, Ala., Hayden L. Rector, Mobile, Ala., for appellant.

Geo. W. Yancey, James E. Clark, Birmingham, Ala., for appellee, Eastern Air Lines, Inc., London & Yancey, Birmingham, Ala., of counsel.

Before RIVES, JONES, and BROWN, Circuit Judges.

RIVES, Circuit Judge.

Mrs. Reuter, a passenger on one of the appellee's airplanes, was injured when, while disembarking therefrom, she tripped and fell. She testified: "As I started down the second step my heel grabbed and I felt myself pitching forward." It is important to note that she did not at the time see what caused her to fall, but later inspected a similar "Silver Falcon" plane and concluded that her heel caught on a metal strip on the step. Her shoes were new, red shoes with heels of a height of "four inches or approximately so" according to her testimony. In the accident the heel was torn loose and apart from the shoe. The step was part of a hydraulically operated ramp which retracts into the plane for flight.

Appellee's city manager, called as a witness for the plaintiffs, testified that the appellee had sixty "Silver Falcon" airplanes in its system and that they were uniform in design. As to the metal strip, he testified: "It seems to be flush, not flush but at all points connected to the piece of aluminum or skin under it. It would appear to be either welded down or riveted closely." He admitted that there was no rivet or weld on the strip on the outer side of it, but tesified: "There is such a thing as sealing one piece of metal to another without its being apparent. You don't have to have an obvious weld." Similar metal strips which he had examined extended above the surface no more than the extent of their thickness. He had never inspected such a strip when he found that he could put a pencil, a screw driver, a finger nail file, or his finger nail under the same and lift it up. None of the strips on any of the planes he had inspected were loose or extended above the surface on which they were laid to such a degree as to make them unsafe.

The plaintiffs offered as an expert witness a consulting engineer who had inspected the passenger disembarkation steps on two Eastern Air Lines "Silver Falcon" planes and had devoted particular attention to the metal strips of the kind in question. He testified that the strip was pretty tight on each plane that he had inspected, and was not loose enough for him to get a scale under. He described this strip as a piece of thin aluminum, which was tightened down against the steps, "In my opinion those two strips I looked at today, it would be hard to trip on those two because they were good and tight." "That was a very narrow piece of metal, I guess perhaps a half inch and I didn't see anything holding it down from the top." Continuing this witness testified as copied in the margin.[1]

---

[1] "Q. Now Mr. Strickland in your opinion as an expert and an engineer tell us about the use of a step constructed as you found that step constructed, continuous use, would it have a loosing effect upon that metal strip or the cap strip? * * A. Possibly. The metal is thin. You could possibly drop something on it and buckle it in a place and kink the metal.

"Q. Would that apply to a normal passenger walking over that type of construction after a period of time? A. Well that is a pretty thin piece of metal.

In building construction we would not put such a piece of metal. * * *

"We would not fasten such a piece of metal to the step in a building such as this public building because of the continual going up and down the steps would soon loosen the piece or it would become a hazard in a building like this.

"Q. You refer to it as becoming a hazard, do you mean it would get in condition so it would likely cause someone to trip and fall?

* * * * * *

The witness further testified that he was not an aeronautical engineer, familiar with the designing or construction of airplanes; that he could not give an opinion as to whether the metal strip might serve a functional purpose in connection with the sealing of the cabin of the plane, or any other functional purpose. The court then declined to permit the witness to answer questions such as "In your opinion as an expert observing those steps that you looked at was it improper from your opinion to put that metal strip on those steps that you looked at in the condition like you saw them?"; and "Then from a safety point in view in looking at the steps that you observed at the airport today would you state whether or not in your opinion they were in a safe condition." The court inquired, "I don't believe that Mr. Strickland would undertake to express an opinion that the placement of those metal strips on those steps in the construction of the plane was improper construction for airplanes, would you Mr. Strickland?" To which the witness replies, "Well, I cannot say that is improper for airplanes."

■■ Competency and qualifications of one offered as an expert witness, and the extent to which his opinion may be required, are matters addressed largely to the judicial discretion of the trial judge.[2] Clearly, there was no abuse of that discretion in this case. Further, the action of the trial court was harmless in view of the witness' categorical admission that he could not say that the construction was improper for airplanes.

See Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.A.

■ It is the duty of common carriers of passengers to exercise the highest degree of care known to persons engaged in like business to provide reasonably safe means for the disembarkation of their passengers.[3] The Alabama courts have, however, frequently held the evidence insufficient to show a breach of such duty.[4]

■ Appellants insist that, under the rule prevailing in the Alabama courts, a scintilla of evidence of negligence requires submission of the issue to the jury, and that since Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, a like rule should be required by the federal courts in diversity cases. Rules 38 and 39 of the Federal Rules of Civil Procedure provide for the kind of jury trial in federal courts that is preserved by the Seventh Amendment. The Erie doctrine is, of course, subservient to that constitutional provision.[5] In diversity cases, therefore, even since Erie, the scintilla of evidence rule prevailing in Alabama and in some other states has no application in the federal courts.[6]

■■ In determining whether there is sufficient evidence to take the case to the jury, a federal judge performs a judicial function and is not a mere automaton. Gunning v. Cooley, 281 U.S. 90, 93, 50 S.Ct. 231, 74 L.Ed. 720. He must determine, "not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing

"A. Yes. It would not have to project but just a fraction of an inch before it could cause someone to fall."

2. St. Joe Paper Co. v. United States, 5 Cir., 155 F.2d 93, 96; Allen v. First National Bank of Atlanta, 5 Cir., 169 F. 2d 221, 224; Atlantic Coast Line R. Co. v. Sweat, 5 Cir., 183 F.2d 27, 29; Johnson v. Battles, 255 Ala. 624, 52 So.2d 702, 705; 20 Am.Jur.Evidence, Sec. 786.

3. Roberts v. Kurn, 231 Ala. 384, 165 So. 77; Alabama Power Co. v. Hall, 212 Ala. 638, 103 So. 867; Mobile Light & R. Co. v. Therrell, 205 Ala. 553, 88 So. 677.

4. Roberts v. Kurn, supra.

5. Wright v. Paramount-Richards Theatres, 5 Cir., 198 F.2d 303, 305.

6. See Herron v. Southern Pacific Co., 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857; White v. New York Life Ins. Co., 5 Cir., 145 F.2d 504, 509; 5 Moore's Federal Practice, 2d ed., Sec. 38.10; 2 Baron & Holtzoff Federal Practice, Sec. 1075, p. 759; cf. Pierce Consulting Engineering Co. v. City of Burlington, 2 Cir., 221 F. 2d 607, 610.

it." Improvement Co. v. Munson, 14 Wall. 442, 448; see Railway Express Agency v. Mallory, 5 Cir., 168 F.2d 426, 427. "The requirement is for probative facts capable of supporting, with reason, the conclusion expressed in the verdict." Myers v. Reading Co., 331 U.S. 477, 485, 67 S.Ct. 1334, 1339, 91 L.Ed. 1615; see Thomas v. Atlantic Coast Line R. Co., 5 Cir., 223 F.2d 1, 4.

■ Mrs. Reuter's testimony that the metal strip of the step was the thing that caught her heel seems to us no more than a conclusion reached by her of what probably happened, a mere afterthought. The record is devoid of any other evidence to show that the step, or the metal strip, was defective. We agree with the district court that there was no substantial evidence of negligence on the part of the defendant.

The judgment is therefore

Affirmed.