ANDERSON, Justice,
for the Court:
On April 4, 1985, Charles R. Lambert (Lambert) filed suit in the Circuit Court of Warren County against Illinois Central Gulf Railroad Company (Illinois Central or the railroad) alleging a cause of action un *51 der the Federal Employers’ Liability Act (F.E.L.A.), 45 U.S.C.A., § 51, et seq., by virtue of Illinois Central’s negligence in failing to provide him a safe place to work and alleging damages in the amount of $882,000.00. On May 9, 1986, Lambert filed an amended complaint adding a claim under the Federal Safety Appliance Act (F.S.A.A.), 45 U.S.C.A., §§ 1-16, alleging a ■failure to equip its train with properly functioning brakes. The case went to trial on February 23, 1987. At the conclusion of Lambert’s case-in-chief, the trial court granted.the railroad’s motion for a directed verdict on the F.S.A.A. claim. On February 26, 1987, the jury, having been presented with only the F.E.L.A. negligence claim, returned a verdict in favor of the railroad, finding by special interrogatory that the railroad had not been negligent. On appeal, Lambert asserts that the trial court erred in directing verdict on the F.S.A.A. claim. He also challenges an evidentiary ruling and the grant of a defense instruction. In affirming, we address only the issue of whether directing verdict was appropriate.
I.
On October 9, 1984, Lambert was employed by Illinois Central as a brakeman and with a crew of three other men had been assigned a run from McComb, MS, to Baton Rouge, LA, scheduled to leave McComb around 5:30 p.m. They coupled up about ten cars from Track 1 in the McComb station’s South Yard and proceeded to couple about 60 more cars from Track 4. Since there was a light rain, Lambert volunteered to perform the brakeman duties alone and sent the other brakeman back on the train.
That brakeman, Thomas Watts, testified that the brakeman’s job, as he watches the cars pull out, is to check for “faulty equipment; sticking brakes.” Watts then said that the brakeman would be checking for “sticking air brakes or dragging brake rig _a car leaking ...” because “a sticking brake or joint squealing or something like that could cause a derailment on down the road ...” In the South Yard of the McComb station, “they” usually set the hand brakes on the first 3 or 4 cars waiting to be connected to a train so that the cars would not roll out of the yard. After the brakeman has made sure that the coupling has been successful and has connected the air hoses for the air brakes (which are then controlled by the engineer), the brakeman checks the hand brakes on those first few cars and releases them if necessary. On cross examination, Watts indicated that a squealing brake meant that the hand brake was still on to some extent and needed to be released by turning the wheel on the car.
Lambert’s version of the accident is that when they got to Track 4 he made the coupling, connected the air hoses under each couple, knocked the hand brakes off of the first 3 or 4 cars and told the engineer to move them on out. As the train pulled out Lambert was standing on the end of a cross tie on the edge of Track 3. When asked how he fell Lambert stated:
Well, I heard something squealing and I thought it was a brake. And I made a step closer to the train so I could knock it off. And I tripped over something and fell forward and the next thing I knew I was hurt.
Lambert also stated that it seemed to him that he tripped over something as soon as he started stepping. He said “My foot just stopped. I hit something solid. I don’t know what it was.” Lambert fell forward into the train and the wheels ran over his left hand resulting in the loss of his three middle fingers.
On cross-examination, Lambert agreed with defense counsel that he could not say whether the squealing sound was an air brake, a hand brake or some other type of squealing sound. He also agreed that, if it had resulted from a hand brake being on, that would indicate that the hand brake was operating properly, doing what it was designed to do. On redirect, Lambert testified that he could not distinguish between the squealing of a hand brake and the squealing of an air brake.
Ferrell Vincent, a retired railroad safety inspector with the Federal Railroad Admin *52 istration, testified as the plaintiffs expert in the general field of railroad safety. After assuming that the hand brakes and air brakes were inspected after the accident, Vincent gave his opinion that the squealing noise had to be “a sticking air brake or a slow releasing air brake.” His opinion was based on the fact that air brakes are designed to release 45 seconds after the engineer activates the releasing mechanism and if it takes longer than that a defective control valve or improperly lubricated rod or cylinder head is indicated. There was no testimony on how long the engineer waited after disengaging the air brakes before moving the train. On cross, Vincent admitted that one cannot tell the difference between a squealing hand brake and a squealing air brake and that if a hand brake had been left on and was squealing it would be operating properly. Vincent never examined the train and the plaintiff offered no proof that the air brakes were inspected before or after the accident.
The parties stipulated to the introduction of one sentence from the deposition of a superintendent, who inspected the train sometime after the accident. The superintendent stated that, as they walked the track, they did not wind and release each hand brake, but visual inspection indicated that the brakes were released. The record does not indicate how soon after the accident this inspection took place.
II.
DID THE TRIAL COURT ERR IN DIRECTING VERDICT IN FAVOR OF THE RAILROAD ON LAMBERT’S F.S.A.A. CLAIM?
Lambert’s position is that it was the air brakes, not a hand brake, that were defective or inefficient. In arguing that the directed verdict was improperly granted, Lambert relies on his expert’s testimony, which he characterizes as uncontroverted, that the air brake was not functioning properly. This Safety Appliance Act violation established, Lambert argues, the ease should have gone to the jury on the issue of whether the violation contributed in whole or in part to the accident.
A Safety Appliance Act violation is a violation of an absolute duty, and a railroad’s negligence or due care is irrelevant. Carter v. Atlanta & St. A.B. R. Co., 338 U.S. 430, 434, 70 S.Ct. 226, 229, 94 L.Ed. 236, 241 (1949). In order to recover under the F.S.A.A. a plaintiff must prove (1) a violation of the act and (2) a causal connection between the violation and the plaintiff’s injury. Carter, 338 U.S. at 434, 70 S.Ct. at 229.

Was There A Violation of the F.S.A.A. in the Instant Case?

Air brakes are covered by the Safety Appliance Act and a violation will be found if they are defective or inefficient. Spokane & I.E.R. Co. v. Campbell, 241 U.S. 497, 36 S.Ct. 683, 60 L.Ed. 1125 (1916); 45 U.S.C.A. §§ 1, 9, 11.
In Myers v. Reading Co., 331 U.S. 477, 67 S.Ct. 1334, 91 L.Ed. 1615 (1947), the United States Supreme Court noted the following:
‘There are two recognized methods of showing the inefficiency of hand brake equipment. Evidence may be adduced to establish some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural and usual manner.’ Didinger v. Pennsylvania R. Co., (CCA 6th) [1930] 39 F2d 798, 799.
‘... Where a jury finds that there is a violation, it will be sustained, if there is proof that the mechanism failed to work efficiently and properly even though it worked efficiently both before and after the occasion in question. The test in fact is the performance of the appliance.’ Philadelphia & R. R. Co. v. Auchenbach, 3 Cir, [1926] 16 F2d 550. ‘Efficient means adequate in performance; producing properly a desired effect. Inefficient means not producing or not capable of producing the desired effect; incapable; incompetent; inadequate ....’ Spotts v. Baltimore & O.R. Co., supra (CCa 7th Ind) [1938] 102 F2d [160] at p 162).
*53 Myers, 331 U.S. at 483, 67 S.Ct. at 1338, 91 L.Ed. at 1619.
In Myers, the plaintiff brought suit against the railroad alleging the railroad’s use of a freight car equipped with a defective hand brake in violation of the F.S.A.A. requirement of “efficient hand brakes.” The plaintiff, a conductor, had attempted to set a hand brake and found it stiff and sticking and then suddenly the brake wheel kicked back, releasing itself. The trial court granted the railroad a J.N.O.V. and the U.S. Supreme Court reversed, finding that the jury could reasonably infer from the evidence that the hand brake which caused the injuries was not an “efficient” hand brake.
In Spokane & I.E.R. Co., supra, the United States Supreme Court held that there was enough evidence of a defect or lack of repair such that a jury might reasonably infer that there was a defect in the valves or packing of the air-brake on the defendant’s train where a defense witness testified that the air brakes were inspected and were in perfect working order shortly before the trip in question and where there was much evidence by plaintiff and others that the air brakes first took hold when applied but then leaked off so as to release the brakes. The Supreme Court reached this conclusion even though the air brake equipment was wrecked, which precluded determining the cause of the air brake’s failure to operate properly. Spokane & I.E.R. Co., 241 U.S. at 505, 60 L.Ed. at 1134.
In Spotts v. Baltimore & O.R. Co., 102 F.2d 160 (7th Cir.1939), the Seventh Circuit found that evidence that the hand brake wheel staff was released from its fastening and fell to one side, throwing the plaintiff to the ground was sufficient for the jury to find that the hand brake was not efficient, even though there was no evidence as to how the staff became loosened. Spotts, 102 F.2d at 162.
In Woods v. New York C. & St. L. R. Co., 339 Ill.App. 132, 88 N.E.2d 740 (1949), the railroad appealed a judgment for the plaintiff based in part on a violation of the F.S.A.A. The evidence at trial showed that when the plaintiff brakeman arrived at work, around 9:15 or 9:30 p.m. he saw another brakeman setting the hand brake on a coal car on a spur track about 10 feet from the switch. Plaintiff was injured when a train he was riding on approached the switch and the coal car had somehow moved and was right at the junction. Plaintiff argued that this established a “failure [of the hand brake on the coal car] to function, when operated with due care, in the normal, natural and usual manner.” The Illinois appellate court reversed finding that the evidence “utterly” failed to meet that test because there was no proof that the brake had been set by the other brakeman with due care and in a normal, natural and usual manner. Woods, 88 N.E.2d at 742.
In Grogg v. Missouri Pacific R. Co., 841 F.2d 210 (8th Cir.1988), the Eighth Circuit reversed the district court’s directed verdict in favor of the railroad on a F.S.A.A. claim where the proof showed that the train on which the plaintiff was an engineer “braked unexpectedly when an air hose failed to remain attached to its train car, causing the air braking system suddenly to lose pressure and go into an emergency stop.” There was also testimony from a brakeman that the air hose must have been pulled loose when it was caught on a piece of track. Thirty other cars had gone over the same track without incident, but the brakeman also testified that the air hose should not come off as it did. Grogg, 841 F.2d at 212-13.
The instant case is most closely analogous to Woods v. New York C. & St. L. R. Co., supra. In the case sub judice, there was absolutely no proof of a defect. Therefore, a jury issue would be created only if there was proof that an air brake failed to function when operated with due care, in the normal, natural and usual manner. Vincent, the expert, testified that in his opinion it was the air brake which squealed and that the air brake failed to function because of a problem with the valve or because of an improperly lubricated rod or cylinder head. However, both Vincent, who never viewed the train in question, and *54 Lambert testified that it was impossible to tell if the squealing was caused by a hand brake or an air brake. Furthermore, Vincent’s opinion assumed that the engineer had operated the air brakes with due care, in the normal, natural and usual manner. The superintendent’s visual inspection of the hand brakes at some undisclosed time after the accident does not establish that a hand brake could not have been engaged or partially engaged at the time of the accident. If it was a hand brake squealing, the evidence at trial concerning hand brakes indicates that the squealing would have meant the hand brake was functioning properly and was efficient, in that it was doing what it was designed to do when applied. Lambert testified only that he thought the squealing was a hand brake that he needed to “knock off”. He never said anything about the air brakes.
In our opinion, the trial court’s grant of a directed verdict in favor of the railroad on Lambert’s Safety Appliance Act claim was appropriate. Lambert failed to establish a violation. It is impossible to tell from this record whether the squealing was coming from a hand brake or an air brake. Even assuming an air brake was squealing, there is no evidence tending to show that the air brake system was operated with due care, in the normal, natural and usual manner. The jury would have been left to speculate, not only on whether there was a defective or inefficient appliance to begin with, but also on which appliance was involved. In light of this holding, we do not reach the second prong of the plaintiff’s test, namely, whether there was a causal connection, however slight, between the inefficient appliance and the injury.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
HAWKINS, P.J., not participating.