# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-00855-SCT

*GARY WAYNE BATTON*

*v.*

*ILLINOIS CENTRAL RAILROAD COMPANY*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 07/02/96 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JEFFREY D. RAWLINGS |
| ATTORNEY FOR APPELLEE: | CHARLES T. OZIER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 6/3/1999 |
| MOTION FOR REHEARING FILED: | 11/05/98 |
| MANDATE ISSUED: | 6/10/99 |

EN BANC.

BANKS, JUSTICE, FOR THE COURT:

¶1. The motion for rehearing is granted. The original opinions are withdrawn and these opinions are substituted therefor.

¶2. We have for review the questions whether a defendant railroad is entitled to summary judgment under the Automatic Coupler Act, 45 U.S.C. § 2, where the coupler fails to couple, upon a showing that the coupler may have been misaligned. We conclude that where the coupler fails to perform the burden remains on the defendant to prove that the equipment's failure was due to a lack of preparation and not the result of a defect in the equipment and that this is a question for the jury. As such, we find that under the facts of this case it was error to grant the defendant's motion for summary judgment. Accordingly, the judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.

## I.

¶3. On June 20, 1992, Appellant Gary Wayne Batton (hereinafter "Batton") was working as a conductor for Appellee Illinois Central Railroad Company (hereinafter "the Railroad"). His crew was making up an outbound train on Track Five at Ferguson Yard, Ferguson, Mississippi. The engineer first shoved the last car in the train, a boxcar, onto Track Five. After putting some of the other cars in the train onto another track, the last cars on the train were to be put onto Track Five to continue making up the outbound train.

The last car on the train going into Track Five was a flatcar which was to connect to the boxcar previously shoved onto Track Five. Batton was stationed at the boxcar in Track Five waiting for the other cars to be shoved onto Track Five.

¶4. Railroad cars are connected by couplers located at each end of the car. The coupler consists of a knuckle joined to the end of a drawbar. The drawbar, or drawhead, extends the knuckle from the car and is designed to move laterally. Lateral movement of the drawhead allows cars to couple on a curved track and also prevents the derailment of cars on curved track. In order for two cars to connect or couple, the open knuckle on one car must engage in an open knuckle on the second car. The knuckles on both the boxcar and the flatcar were open to allow the two cars to couple.

¶5. Batton was the individual solely responsible for making certain that the couplers and drawbars were properly aligned on the cars before the first coupling attempt was made. Batton observed the position of the drawhead on the boxcar and that of the flatcar as it approached him. Even though the couplers on the two cars appeared to be aligned enough to make the coupling, Batton admitted that, in fact, they were a little bit out of alignment. In fact, Batton testified that just before the two couplers came together on the first coupling attempt, the couplers were about four inches out of alignment, which was more than it should have been. Batton admitted that other than the couplers being out of alignment, he saw nothing else that prevented the cars from coupling. The knuckles on each car were also knocked into a closed position.

¶6. After the couplers butted together on the first attempt to couple, the drawbars had to be moved four to five inches in order to have proper alignment so the cars could couple properly. Batton also had to open each knuckle so that a second coupling attempt could be made. He was successful in opening the knuckle and moving the drawbar on the boxcar without injury. The knuckle on the coupler of the flatcar did not open in the usual manner by merely pulling the pin. Instead, when Batton pulled the pin, it only partially opened the knuckle. Thus, Batton proceeded to manually open the knuckle. He then attempted to push the drawhead back into position. It was at this time that Batton injured his wrist. The second attempt to couple the cars was successful.

¶7. Batton filed this lawsuit against the Railroad on June 9, 1994, pursuant to the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51, and the Automatic Coupler Act , 45 U.S.C. § 2, which is a Federal Safety Appliance Act (FSAA), for damages received when aligning a drawbar that had failed to automatically couple on impact. The Railroad filed a motion for summary judgment on August 14, 1995. The motion was denied on October 11, 1995. The Railroad later filed a motion to reconsider on May 20, 1996, citing *Norfolk & W. Ry. v. Hiles*, 516 U.S. 400, 412 (1996), in which the Supreme Court refused to hold that "a misaligned drawbar is, as a matter of law, a malfunctioning drawbar." The Circuit Court of Hinds County granted the Railroad's motion to reconsider and for summary judgment and dismissed the case on July 2, 1996. Batton filed a Notice of Appeal on August 1, 1996.

## II.

## A.

¶8. Batton raises the issue of whether the Automatic Coupler Act is violated when a coupling mechanism fails to perform due to misalignment. Batton alleges that the Railroad violated the Federal Employer's Liability Act, 45 U.S.C. §§ 51 to 60, as well as the Automatic Coupler Act, 45 U.S.C § 2.

¶9. The FELA provides:

Every common carrier by railroad while engaging in commerce between any of the several States or Territories, . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

. . . .

45 U.S.C. § 51 (1994). The Automatic Coupler Act, a Safety Appliance Act, provides:

[I]t shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.

45 U.S.C. § 2 (1988).[(1)]

¶10. The United States Supreme Court has held that a railroad violated the Automatic Coupler Act if an employee is injured in the process of aligning a drawhead if the misalignment of the drawhead was caused by either an operational or mechanical defect of the coupling mechanism. *Norfolk & W. Ry. v. Hiles*, 516 U.S. 400, 408 (1996); *Affolder v. New York, Chicago & St. Louis R.R.,* 339 U.S. 96 (1950); *Myers v. Reading Co.*, 331 U.S. 477 (1947). The *Myers* Court stated that there were two recognized methods in which a violation of the FSAA can be established: (1) evidence of some particular defect, or (2) evidence showing a failure of the coupler to function in the normal, natural, and usual manner. *Myers*, 331 U.S. at 483. In *Affolder*, the Supreme Court, in applying the "failure to function" method, held that the failure of the coupling equipment to perform properly as required by the Automatic Coupler Act is an actionable wrong, in and of itself, without any evidence of a mechanical defect. *Affolder*, 399 U.S. at 99. Therefore, a coupler mechanism's failure to perform can establish a defective coupler and will be a violation of the Automatic Coupler Act.

¶11. The Supreme Court has determined that there are defenses to a plaintiff's claim of failure to perform. In *Affolder*, the Court noted that the railroad could raise as a defense that the coupler failed to perform because both knuckles were closed at the time of impact preventing the cars from coupling. *Id.* at 99. In *Norfolk & W. Ry. v. Hiles*, 516 U.S. 400 (1996), the Court recently set out another defense that a railroad can assert in a failure to perform case. The Court held that the drawbars on two cars to be coupled must first be properly aligned for the automatic couplers to function in the normal, natural, and usual way. *Id.* at 410. Thus, the Court extended *Affolder*'s restriction on failure to perform liability to every step necessary to prepare a nondefective coupler for coupling, including ensuring proper alignment of the drawbar. *Id.* In reversing the directed verdict for the employee, the Court refused to hold that a misaligned drawbar, as a matter of law, is a violation of the FSAA or Automatic Coupler Act. *Id.* at 412. The Court stated:

Adopting Hiles' reading of § 2 would require us to hold that a misaligned drawbar, by itself, is a violation of the [F]SAA, and we are quite unwilling to do that. It is true that our failure-to-perform

cases made clear that the railroad will be liable for injuries caused by malfunctioning equipment, even when cars are equipped with automatic couplers. But, we cannot agree that a misaligned drawbar is, as a matter of law, a malfunctioning drawbar. Historically, misaligned drawbars were an inevitable byproduct of the ability to traverse curved track and, like the closed knuckle in *Affolder*, are part of the normal course of railroad car operations.

*Id.*

¶12. However, in a failed coupling attempt case, the plaintiff proves his claim under § 2 of the FSAA or Automatic Coupler Act by demonstrating that the couplers failed to couple automatically and this failure caused, in whole or in part, the plaintiff's injury. *Affolder*, 339 U.S. at 99. The burden is then placed on the defendant to rebut the plaintiff's case by proving both (1) that the equipment was not properly set, e.g., that the drawbars were not properly aligned or that one of the knuckles was not open, and (2) that a defect in the equipment did not cause the equipment to be improperly set, i.e., the equipment became improperly set "during the ordinary course of railroad operations." *Hiles*, 516 U.S. at 409.

**B.**

¶13. The question remains as to whether the FELA and the facts of this case entitle Batton to a jury determination as to the Railroad's violation of the Automatic Coupler Act.

¶14. Batton asserts that the FELA imposes on the railroad a higher duty and a minimal requirement of proof by the injured employee. He also asserts that the FELA mandates that it is the jury, not the trial court, which must decide the case. He bases this on the premise that the role of the jury is significantly greater in FELA cases than in common law negligence actions. *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 510 (1957).

¶15. In *Norfolk & W. Ry. v. Hiles*, 516 U. S. 400 (1996), the Court reversed a directed verdict in favor of the employee holding that the railroad was liable as a matter of law, finding that where the proof showed that the coupler was misaligned an employee was not entitled to remove the issue of liability from jury consideration. It did not, however, hold the converse, that is, that the railroad was entitled to judgment where misalignment is shown. Nor did it remove the burden from the railroad to prove the absence of a defect. Instead it agreed that "failure to perform as required by the SAA is itself an actionable wrong **dependent on neither negligence nor proof of a defect**. . . ." *Id.* at 409 (emphasis added & footnote omitted).

¶16. *Hiles* extended the previous holding in *Affolder v. New York, Chicago & St. Louis R.R.,* 339 U. S. 96 (1950), which recognized that a coupler not sufficiently prepared to couple, in that instance because it was closed, could be a defense to liability. *Hiles*, 516 U.S. at 410. In *Affolder* the Court affirmed the judgment in favor of the employee and held that the jury instructions sufficiently afforded the railroad the opportunity to argue the lack of preparation as a defense. 339 U.S. at 99. Neither *Affolder* nor *Hiles* removed from the jury the right to decide why the coupler failed and to conclude that the failure was due to simple inefficiency, in which case the verdict is for the plaintiff. As the Court stated in *Myers*, "[t]he test in fact is the performance of the appliance." *Myers v. Reading Co*., 331 U.S. 477, 483 (1947). In *Myers* the Court reversed the trial and appellate courts and reinstated a verdict for the plaintiff employee.

¶17. Similarly in *Kavorkian v. CSX Transp., Inc*., 117 F.3d 953 (6th Cir. 1997), decided after *Hiles* a

verdict for the plaintiff employee was upheld. That court held that the burden of proof was on the defendant to prove that the equipment was not properly aligned *and* that it was not otherwise defective. *Kavorkian*, 117 F.3d at 957. In none of these cases is there any hint that a summary judgment or directed verdict in favor of the railroad is proper in a case where there is a failure to couple.

## CONCLUSION

¶18. For the above and foregoing reasons, the judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.

¶19. **REVERSED AND REMANDED.**

**PRATHER, C.J., McRAE, WALLER AND COBB, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, P.J., AND MILLS, J. SULLIVAN, P.J., NOT PARTICIPATING.**

### SMITH, JUSTICE, DISSENTING:

¶20. On motion for rehearing, the majority elects to reverse and remand the lower court grant of summary judgment. Because I believe this case was correct originally, I respectfully dissent.

¶21. Here, Batton proved his failure to perform claim under § 2 of the FSAA or Automatic Coupler Act by demonstrating that the couplers failed to couple automatically and this failure caused, in whole or in part, his injury. *Norfolk &W. Ry. Co. v. Hiles*, 516 U.S. 400, 409 (1996) . However, the Railroad rebutted Batton's case by proving both (1) that the equipment was not properly set, e.g., that the drawbars were not properly aligned, and (2) that a defect in the equipment did not cause the equipment to be improperly set, i.e., the equipment became improperly set "during the ordinary course of railroad operations." *Id.* at 409. The United States Supreme Court has clearly mandated that the failure of a nondefective coupler to automatically couple due to misalignment is <u>not</u> a violation of the FSAA or Automatic Coupler Act. Consequently, the Railroad has demonstrated a defense to liability according to the *Hiles* decision. Thus, the Railroad met its initial burden of establishing the absence of genuine issues and material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Daniels v. GNB, Inc.*, 629 So.2d 595, 600 (Miss. 1993).[(2)] The burden was then shifted to Batton to show that summary judgment was inappropriate; he came up short. *Brown v. Credit Ctr. Inc.*, 444 So.2d 358, 364 (Miss. 1983). The record shows that there is no evidence supporting a violation of the Automatic Coupler Act. Batton presents no evidence of a defect that prevented the couplers from operating properly or that caused the couplers to misalign. Furthermore, Batton testified that the reason the couplers failed to operate properly was drawbar misalignment. The exceptions, or defenses, to an alleged violation of the Automatic Coupler Act, which were recently articulated by the United States Supreme Court in *Hiles* are met in the present case.

¶22. In closing, summary judgment is appropriate when a plaintiff fails to present sufficient evidence raising a material issue of fact. After the Railroad presented evidence establishing that there were no genuine issues of material fact, the burden shifted to Batton to go beyond the pleadings and show that summary judgment

was inappropriate. The fact that the claim is brought under the FELA does not alleviate Batton's obligation to produce evidence justifying the case going to a trier of fact. Not only did Batton fail to meet this burden, his testimony proves that the Railroad is not liable. Thus, summary judgment was proper for this case, and the Hinds County Circuit Court was correct in granting the Railroad's motion.

¶23. Accordingly, I respectfully dissent.

**PITTMAN, P.J., AND MILLS, J., JOIN THIS OPINION.**

1. This section was repealed by Act, July 5, 1994, P.L. 103-272 §7(b), 108 Stat. 1379, except for rights and duties that matured, penalties that were incurred, and proceedings that were begun before the enactment. Since this action was begun on June 9, 1994, the repeal is not applicable here. Further, the section was amended and recodified at 49 U.S.C. § 20302.

2. Mississippi Rule of Civil Procedure 56 is identical to the Federal Rule of Civil Procedure 56 with the exception that Mississippi added 56(h) which deals with the cost assessment among parties. Based on these similarities and our use of federal cases when interpreting Miss. R. Civ. P. 56, both state and federal cases are cited.