Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/28/2017 09:09 AM CDT

Kevin M. Winder, appellant, v.
Union Pacific Railroad Company,
a Delaware corporation, appellee.
___ N.W.2d ___

Filed May 5, 2017.    No. S-15-1100.

1. **Federal Acts: Railroads: Claims: Courts.** In disposing of a claim controlled by the Federal Employers' Liability Act, a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the act, but substantive issues concerning a claim under the act are determined by the provisions of the act and interpretive decisions of the federal courts construing the act.

2. **Directed Verdict: Appeal and Error.** In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence.

3. **Directed Verdict: Evidence.** A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.

4. **Federal Acts: Railroads: Liability.** Under 49 U.S.C. § 20302(a)(1)(B) (2012) of the federal Safety Appliance Acts, a railroad carrier may use a vehicle, including a railcar, only if it is equipped with efficient handbrakes.

5. **Federal Acts: Railroads: Negligence: Proof.** Under 49 U.S.C. § 20302(a)(1)(B) (2012) of the federal Safety Appliance Acts, there are two ways an employee may show the inefficiency of handbrakes: (1) Evidence may be adduced to establish some particular defect in the handbrake or (2) inefficiency may be established by showing the

handbrake failed to function, when operated with due care, in the normal, natural, and usual manner.

6. **Federal Acts: Railroads: Negligence: Words and Phrases.** For purposes of 49 U.S.C. § 20302(a)(1)(B) (2012) of the federal Safety Appliance Acts, "efficient" means adequate in performance and producing properly a desired effect. "Inefficient" means not producing or not capable of producing the desired effect and thus incapable, incompetent, or inadequate.

7. **Federal Acts: Railroads: Negligence.** When there is conflicting evidence regarding whether a handbrake failed to function, when operated with due care, in the normal, natural, and usual manner, the question of inefficiency under 49 U.S.C. § 20302(a)(1)(B) (2012) of the federal Safety Appliance Acts is one for the jury.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN and PETER C. BATAILLON, Judges. Affirmed.

William Kvas and Richard L. Carlson, of Hunegs, LeNeave & Kvas, P.A., and Jayson D. Nelson for appellant.

Anne Marie O'Brien and Daniel J. Hassing, of Lamson, Dugan & Murray, L.L.P., and Andrew Reinhart for appellee.

HEAVICAN, C.J., WRIGHT, CASSEL, STACY, KELCH, and FUNKE, JJ.

STACY, J.

Kevin M. Winder filed an action for damages against his employer, Union Pacific Railroad Company (UP), alleging he injured his back while turning a wheel to release the handbrake on a railcar. Winder asserted claims under the Federal Employers' Liability Act (FELA)[1] and the federal Safety Appliance Acts (FSAA).[2] The jury returned a general verdict in favor of UP, and Winder appeals. We affirm.

---

[1] 45 U.S.C. §§ 51 to 60 (2012).

[2] 49 U.S.C. §§ 20301 to 20306 (2012).

## FACTS

On October 28, 2012, Winder was working as a conductor for UP in North Platte, Nebraska. Part of his job was to manually release the handbrakes on railcars. Handbrakes are used to secure railcars to the track when a train is not in motion. The handbrake is manually applied by using a brake wheel and turning it clockwise. The handbrake is manually released one of two ways: by either turning the brake wheel counterclockwise or using a quick-release lever. Not all handbrakes have quick-release levers, but the ones Winder was releasing did. Winder testified he was trained "to first try the quick release lever [and] [i]f that does not work, then you turn the wheel."

Winder successfully released the handbrake on the first railcar. When he attempted to use the quick-release lever on the next railcar, the lever pulled easily but the brake did not release. Winder then began turning the wheel in a counterclockwise direction to release the brake. According to Winder, as he did so, he suddenly felt a sharp pain in his back and stopped working.

Winder immediately notified UP of his injury, and he sought medical attention. He received significant treatment, including surgery, and was unable to return to work at UP.

Winder eventually brought this action against UP, alleging claims under FELA and FSAA. FSAA does not by its terms confer a right of action on injured parties, but if a plaintiff proves a violation of FSAA, he or she may recover under FELA without further proof of negligence by the railroad.[3] "In short, [FSAA] provide[s] the basis for the claim, and . . . FELA provides the remedy."[4] As will be explained in more detail later, FSAA requires that railroads may use a vehicle,

---

[3] See *Urie v. Thompson*, 337 U.S. 163, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949).

[4] *Beissel v. Pittsburgh and Lake Erie R. Co.*, 801 F.2d 143, 145 (3d Cir. 1986).

including a railcar, only if it is equipped with "efficient hand brakes."[5] Winder alleged UP violated this provision of FSAA, because the quick-release lever on the handbrake was inefficient.

The case was tried to a jury. At the close of the evidence, Winder moved for a directed verdict in his favor on the question of whether UP violated FSAA. The district court overruled the motion, and the jury returned a general verdict in favor of UP. Winder filed this timely appeal, which we moved to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[6]

## ASSIGNMENT OF ERROR

Winder's sole assignment of error is that the court erred in failing to direct a verdict in his favor on the FSAA claim.

## STANDARD OF REVIEW

[1] In disposing of a claim controlled by FELA, a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the act, but substantive issues concerning a claim under FELA are determined by the provisions of the act and interpretive decisions of the federal courts construing FELA.[7]

[2,3] In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence.[8] A directed

---

[5] 49 U.S.C. § 20302(a)(1)(B).

[6] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

[7] *Ballard v. Union Pacific RR. Co.*, 279 Neb. 638, 781 N.W.2d 47 (2010).

[8] *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013).

verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.[9]

## ANALYSIS

[4] The relevant portion of FSAA provides that railroad carriers may use a vehicle, including a railcar, only if it is "equipped with . . . efficient hand brakes."[10] The U.S. Supreme Court has interpreted this provision to impose "an absolute and unqualified prohibition against [a railroad's] using or permitting to be used, on its line, any car not equipped with 'efficient hand brakes.'"[11]

[5,6] In *Myers v. Reading Co.*[12] the U.S. Supreme Court analyzed FSAA's efficient handbrake requirement. *Myers* held there are two ways an employee may show the inefficiency of handbrakes: (1) Evidence may be adduced to establish some particular defect in the handbrake or (2) inefficiency may be established by showing the handbrake failed to function, when operated with due care, in the normal, natural, and usual manner.[13] *Myers* established that "'[e]fficient means adequate in performance; producing properly a desired effect. Inefficient means not producing or not capable of producing the desired effect; incapable; incompetent; inadequate.'"[14]

Winder makes no claim in this appeal that the handbrake had any particular defect. Instead, he points to undisputed evidence that when he pulled the quick-release lever, it failed to release the handbrake. He argues this evidence was

---

[9] *Id.*

[10] 49 U.S.C. § 20302(a)(1)(B).

[11] *Myers v. Reading Co.*, 331 U.S. 477, 482, 67 S. Ct. 1334, 91 L. Ed. 1615 (1947).

[12] *Myers v. Reading Co., supra* note 11.

[13] *Id.*

[14] *Id.*, 331 U.S. at 483.

sufficient as a matter of law to prove the handbrake failed to function in the normal, natural, and usual manner.

No party disputes that when Winder pulled the quick-release lever it failed to release the brake, requiring him to use the wheel to release the brake. The question is whether this evidence entitled Winder to a directed verdict that as a matter of law, the handbrake failed to function, when operated with due care, in the normal, natural, and usual manner. On this record, we find no error in denying the motion for directed verdict.

[7] Case law from other jurisdictions demonstrates that when there is conflicting evidence regarding whether a handbrake failed to function in the normal, natural, and usual manner, the question of inefficiency is one for the jury. In *Strickland v. Norfolk Southern Ry. Co.*,[15] a railroad worker attempted to release a handbrake by using the quick-release lever. The quick-release lever did not release the brake, which the record showed was not "'an out-of-the-blue thing.'"[16] The worker then attempted to release the handbrake using the brake wheel, which would not turn. He injured himself attempting to exert more pressure on the wheel. The district court granted summary judgment in favor of the railroad, in effect finding the handbrake was not inefficient as a matter of law. The 11th Circuit reversed, finding the worker's testimony about the level of force exerted in turning the wheel created a fact issue for the jury to resolve in determining whether the handbrake was inefficient.

An unpublished opinion from the U.S. District Court for the District of Nebraska also illustrates that when there is conflicting evidence on whether a handbrake failed to function normally, the question of inefficiency cannot be decided as a matter of law. In *Chapp v. Burlington Northern Santa Fe R.*

---

[15] *Strickland v. Norfolk Southern Ry. Co.*, 692 F.3d 1151 (11th Cir. 2012).

[16] *Id.* at 1155.

*Co.*,[17] a railroad worker attempted to release a handbrake by pulling the quick-release lever. When the quick-release lever failed, he attempted to release the brake by turning the wheel and alleged he was injured while doing so. The worker moved for summary judgment on his FSAA claim, arguing, among other things, that the handbrake was inefficient as a matter of law. The court denied the motion, reasoning there was conflicting evidence on whether the handbrake failed to function in the normal, natural, and usual manner, and inefficiency could not be determined as a matter of law.[18]

Here, there was conflicting evidence at trial regarding whether it was common or usual for a quick-release lever to fail to release a handbrake. Winder testified that in his work as a conductor, he recalled only two occasions when the quick-release lever failed to release the handbrake. And an expert witness called on Winder's behalf testified that if a quick-release lever failed to work, the handbrake operation was inefficient. But a UP trainman testified that quick-release levers fail to release the handbrake "on a fairly regular basis," and he opined they worked about "half the time." He testified it was very common and usual in the industry for the quick-release levers not to work. Another witness, a UP supervisor, testified that quick-release levers failed to work "quite a bit." And a railroad consultant hired by UP testified

---

[17] *Chapp v. Burlington Northern Santa Fe R. Co.*, No. 4:04CV3021, 2005 WL 1331157 (D. Neb. June 2, 2005) (unpublished memorandum and order).

[18] *Id.* See, also, *Rogers v. Norfolk Southern Ry. Co.*, No. 3:13 cv 798, 2015 WL 4191147 (N.D. Ohio July 10, 2015) (unpublished opinion) (conflicting evidence on why handbrake failed to release and whether it failed to function in normal, natural, and usual manner presented questions for trier of fact and prevented summary judgment); *Ditton v. BNSF Ry. Co.*, No. CV 12-6932 JGB (JCGx), 2013 WL 2241766 (C.D. Cal. May 21, 2013) (unpublished opinion) (conflicting evidence on failure of quick-release lever to release and evidence that handbrakes commonly become stuck presented factual questions for jury under FSAA).

it was "not at all uncommon" for the quick-release lever not to work.

A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.[19] Here, there was conflicting evidence on whether the handbrake failed to function in the normal, natural, and usual manner, and the district court properly denied the motion for directed verdict and submitted that issue to the jury.

## CONCLUSION

We find no merit to Winder's assignment of error and affirm the judgment of the district court.

AFFIRMED.

MILLER-LERMAN, J., not participating.

---

[19] *Wulf v. Kunnath, supra* note 8.