## SPOTTS v. BALTIMORE & O. R. CO.*
### No. 6635.

Circuit Court of Appeals, Seventh Circuit.
Dec. 20, 1938.

Rehearing Denied March 27, 1939.

*Writ of certiorari denied 59 S.Ct. 1039, 83 L.Ed. ——.

Charles D. Clark, Henry D. Sheean, and E. W. Lademann, all of Chicago, Ill., and Howard W. Mountz and George E. Mountz, both of Garrett, Ind., for appellant.

Edward B. Henslee, of Fort Wayne, Ind., and Tom Davis and Ernest A. Michel, both of Minneapolis, Minn., for appellee.

Before SPARKS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendant appeals from a judgment rendered against it in an action brought by plaintiff to recover for personal injuries and assigns error upon the action of the court in refusing its motion for a directed verdict. It insists also that the verdict is excessive; that the court erred in its instructions to the jury and that there is no substantial evidence to support a verdict.

The complaint charged that plaintiff was employed by defendant, an interstate carrier, as a brakeman; that at the time of the accident, defendant negligently failed to equip properly a certain car with an efficient brake wheel and brake staff, contrary to the provisions of the Safety Appliance Act, negligently provided a brake staff and wheel which fell to one side, when plaintiff attempted to operate same, and permitted the brake to be and remain in a defective and unsafe condition contrary to the provisions of the Safety Appliance Act.

The evidence of plaintiff was to the effect that at the time of the accident, it became his duty to tighten the brake on one of defendant's freight cars, an open gondola, the end-gates of which drop inwardly when it is desired to load material which extends beyond the length of the car if the end-gates are closed. To accommodate such loading the brake on the car is hinged at the lower end so that it may swing downwardly and outwardly to one side to a horizontal position. It can be operated in either position. Just before the accident, the brake was upright, engaged in a metal slot and held in place by a latch. This latch closes the slot in which the upright staff is held and when the operator raises the latch and swings the brake staff downwardly to horizontal position it rests in another slot provided for that position.

Plaintiff testified that when he mounted the car, the staff was upright; that he took hold of the wheel, turned it with his right hand to tighten it and then put in it his brake club with his left hand and started to tighten the brake still further and that, while he was doing this, the staff suddenly fell over to the horizontal position and caused him to fall with it. He testified that he found the brake in its usual and ordinary upright position; that he took up the slack with his right hand a couple of rounds,—enough to get the brake tight. He had been a brakeman for some twenty-eight years and said that he did his work in the usual and customary manner; that when so operated, such brakes in the ordinary course of events do not fall, but that this one fell; that his instructions were to push on the brake club and this he was doing at the time of the accident, in the ordinary and customary manner. Another witness testified that he saw plaintiff get on the car, apply the brake club and fall.

Defendant proved that the car and brake were of a type first used by American railroads during the World War, while the Railroad Administration was operating them. At the close of that Administration, 500 of a total of 4500 cars of this character were delivered to defendant and it itself added 6000 more cars of this type. The car was inspected in the yards the morning following the accident between 7 and 8 o'clock. The inspectors then tested it with the brake staff in both the upright and horizontal positions and found no defects in the mechanism. No repairs were made and the car and brake continued in service.

The federal statute provides that all cars must be equipped with "efficient" hand brakes. U.S.C., Title 45, Section 11, 45 U.S.C.A. § 11. The purpose of the act,

as defined by the courts, is to increase the protection of operating train men to an extent beyond that furnished by the common law. The Congress, not satisfied with the common law duty of the carrier and resulting liability, has prescribed and defined the duty by statute. The purpose was to supplant the qualified duty of the common law with an absolute duty, deemed more just. Accordingly, if a railroad uses cars which do not comply with the standard, it violates the law, with consequent liability to make compensation to those injured as a result of its omission. St. Louis, I. M. & S. R. Co. v. Taylor, 210 U.S. 281, 28 S.Ct. 616, 52 L.Ed. 1061. The statutory obligation is absolute and mandatory upon all carriers. Lehigh Valley R. Co. v. Howell, 2 Cir., 6 F.2d 784. Thus, in Baltimore & Ohio Ry. Co. v. Groeger, 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419, the court said [page 170]:

"The requirement of the statute is substituted for the common-law rule which holds the employer to ordinary care to provide his employees a reasonably safe place in which, and reasonably safe appliances and machinery with which, to work. It is as definite and certain as is the common-law rule, and to hold that the duty imposed cannot be ascertained would be as unreasonable as it would be to declare that the common-law rule, which is ordinarily applied in personal injury actions brought by employees against employers is too indefinite to be enforced or complied with."

Consequently the question in the present case was whether an efficient hand brake within the meaning of those words as used by the act was provided upon the car in question. From the evidence of plaintiff, it is apparent that the accident happened because in some manner the staff was released from its fastening and fell to one side thus throwing plaintiff to the ground and injuring him. Though there is no testimony as to how the staff became loosened, the jury had a right to find from plaintiff's evidence that it was released and fell because it was not efficient. Proof of an actual break or visible defect in a coupling appliance is not a prerequisite to a finding that the statute has been violated. Where a jury finds that there is a violation, it will be sustained, if there is proof that the mechanism failed to work efficiently and properly even though it worked efficiently both before and after the occasion in question. The test in fact is the performance of the appliance. Philadelphia & R. R. Co. v. Auchenbach, 3 Cir., 16 F.2d 550. Efficient means adequate in performance; producing properly a desired effect. Inefficient means not producing or not capable of producing the desired effect; incapable; incompetent; inadequate. Assuming that the brake was properly set, as plaintiff testified, the fact that it did not work properly demonstrates, prima facie at least, its inefficiency. Didinger v. Pennsylvania R. Co., 6 Cir., 39 F.2d 798.

Inasmuch as there was substantial evidence to support a verdict in plaintiff's favor, the motion for directed verdict was properly overruled.

Defendant insists, however, that the order of the Interstate Commerce Commission of March 13, 1911, specifically providing for the kind of hand brakes that might be used on such cars, viz., "hand brake * * * of any efficient design," was in effect a direct approval of brakes such as that complained of. Its theory is that if the carrier has complied with the requirements of the Commission, no jury can be permitted to exercise its judgment as to whether a hand brake is efficient. It relies upon its inspection to prove that the brake was in good working order. But we cannot say that that evidence in itself, as a matter of law, renders the evidence produced by plaintiff insufficient. Defendant offered evidence which would have supported a finding for it to the effect that the brake was examined after the accident and found to be in good working order. We cannot accept this as conclusive, however, for the testimony of plaintiff that the brake was used in the normal and usual manner and failed to work efficiently but did so inefficiently, throwing him to the ground, is such substantial evidence of inefficiency as to make an issue for the jury. Detroit, T. & I. R. Co. v. Hahn, 6 Cir., 47 F.2d 59. In other words, we cannot say as a matter of law that any and all inferences which the jury might reasonably draw from the evidence would support only a verdict for defendant and not one for plaintiff. Nor can we say that, as a matter of law, the contradictory evidence offered by defendant shows that plaintiff's testimony cannot be true. A contention for such action is an appeal to us to weigh the conflicting evidence in

the light of probabilities and thus to invade the exclusive province of the jury, and, on an application for a new trial, of the trial judge. This we may not do. Philadelphia & R. Ry. Co. v. McKibbin, 3 Cir., 259 F. 476. The order of the Interstate Commerce Commission is merely a direction to comply with the statute requiring an "efficient hand brake." Whether defendant complied was a question for the jury.

Plaintiff relies upon Atchison, T. & S. F. Ry. Co. v. Scarlett, 300 U.S. 471, 57 S. Ct. 541, 81 L.Ed. 748. The court there said that when a railroad company has discharged its full duty, so far as the ladder requirement of the Safety Appliance Act is concerned, the judgment of the jury cannot be substituted for that of the Commission. To the same effect is Auschwitz v. Wabash Ry. Co., 346 Ill. 190, 178 N.E. 403. In the Scarlett Case, the court said also that it might fairly presume, in view of the long use of brace rods of the type there present, that the Commission in the performance of its duties was aware of the situation and knowingly permitted its rule in respect to ladder clearance to remain without change. But the opinion must be read in connection with other announcements of the Supreme Court, including that in the Groeger Case. The Scarlett Case arose out of a claim of violation of the section of the Safety Appliance Act relating to handholds and ladders. Getting down from a car, plaintiff was injured. The ladder was not defective. There was a question of proper clearance between the ladder and the brace rod, but that clearance exceeded the minimum amount approved by the Commission. The conclusion of the court was that the brace rod did not constitute a part of the ladder, which was of the specific type prescribed by the Commission.

Here the Commission has prescribed merely any "efficient handbrake"; it has included no specific requirements and fixed no standard as filling the demands of "efficiency." This brake in itself contains no known inherent defect. The action of the Commission might prevent a verdict for plaintiff if plaintiff relied simply upon the inherent character of the brake. But, under the undisputed evidence, when this brake was used in the ordinary manner, it did not perform the service it was intended to perform; it complied with neither statute nor order. It did not produce the result it was intended to produce, but on the contrary, dropped out of position, fell and thus caused plaintiff to fall. It was this inefficiency in the operation of the brake at the time of the accident that caused the accident. At least the jury must have believed such to be the fact and had a right so to infer from the evidence. Such was not the case in Atchison, T. & S. F. Ry. Co. v. Scarlett, 300 U.S. 471, 57 S.Ct. 541, 81 L.Ed. 748.

■ Defendant complains also of certain instructions given and the refusal to give others. In substance the court advised the jury that if it found that while using and operating the brake, plaintiff did so in the usual and customary manner and that, while he was so engaged in operating it, the staff fell sideways and caused plaintiff to be thrown to the ground, it was a question for them to decide from all the evidence whether the brake was an efficient one within the statute; that an efficient one will usually produce the expected results. These instructions we believe are in accord with the law as we have heretofore pointed out.

■ Complaint is also made because of the court's refusal to instruct the jury that if the brake with which the car was equipped was the type and kind authorized and approved by the Commission and was maintained in good and safe condition, the use was no violation of the act. This we do not believe is in accord with the law. The Interstate Commerce Commission cannot override an act of Congress. If the brake was in fact inefficient at the time of its operation from whatever cause, irrespective of the manner of its installation, its approval or its inspection, the jury had a right so to find. The proffered instructions were inapplicable and inappropriate.

The judgment of the District Court is Affirmed.