F. Richard **WALTON**, Plaintiff–
Appellant,

v.

**JENNINGS COMMUNITY HOSPITAL,**
INC. and Louie C. **Vaught,**
Defendants–Appellees.

No. 92–1614.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 5, 1992.

Decided July 21, 1993.

Vernon J. Petri, Indianapolis, IN, Thomas R. Ruge (argued), Lewis & Kappes, Indianapolis, IN, for F. Richard Walton.

Douglas J. Hill, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, IN, for Jennings Community Hosp., Inc.

Don A. Tabbert, Richard A. Kempf, Tabbert & Ford, Indianapolis, IN, Frederick W. LaCava, Robert G. Zeigler (argued), Lacava, Zeigler & Carter, Indianapolis, IN, for Louie C. Vaught.

Before RIPPLE and KANNE, Circuit Judges, and WILLIAMS, District Judge.*

RIPPLE, Circuit Judge.

Dr. F. Richard Walton, a surgeon, filed suit against his former employer, Jennings Community Hospital, and the Administrator of the Hospital, Louie C. Vaught. He sought recovery on the ground that defamatory comments made by Mr. Vaught to a prospective employer led to Dr. Walton's loss of an employment opportunity. The matter came to the district court pursuant to its diversity jurisdiction. 28 U.S.C. § 1332. Dr. Walton now appeals the district court's decision that he failed to show that Mr. Vaught's statements proximately caused Dr. Walton's loss. For the reasons that follow, we affirm the judgment of the district court.

I

BACKGROUND

A. *Facts*

On March 1, 1983, Dr. Walton's resignation from Jennings Hospital became effective; he left after several troubled months. He had been accused on May 7, 1982, of making unsolicited sexual advances to a nurse at Jennings Hospital. He denied the charges. On September 14, 1982, Dr. Walton was indicted on charges of Medicaid theft resulting from services he performed for patients at Muscatatuck State Hospital. The indictment was dismissed on December 15, 1982.[1]

When Dr. Walton announced that he intended to resign from Jennings Hospital, he entered into a contract with the hospital that provided as follows:

> The Hospital in replying to inquiries in regard to future employment of Dr. Walton will accurately report that Dr. Walton has voluntarily resigned from the hospital and if asked, and only if asked, will reply that he was not under any investigation as of the date he submitted his resignation.

Appellant's Br. at 5. This agreement was the basis for Dr. Walton's breach of contract claim against Jennings Hospital and Mr. Vaught. In *Walton v. Jennings Community Hospital*, 875 F.2d 1317 (7th Cir.1989), this court found the agreement to be unenforceable as against public policy because it sought, contrary to the Indiana Peer Review Act, to restrict information that could be given to prospective employers about Dr. Walton. *See* Ind.Code Ann. §§ 34-4-12.6-1 to -12.6-5 (West 1983 & Supp.1992).

Following his resignation, Dr. Walton pursued a position with the physicians' group practicing at the Kendrick Memorial Hospital in Mooresville, Indiana. He disclosed to Dr. Kendrick, head of the physicians' group, that he had resigned from Jennings Hospital and that he had been wrongfully accused of sexual misconduct and wrongfully charged with Medicaid fraud. Subsequently, Dr.

---

* The Honorable Ann C. Williams of the Northern District of Illinois is sitting by designation.

1. The district court found the Jennings County prosecutor's indictment of Dr. Walton to be unworthy of credence in a number of ways. The county prosecutor testified that Dr. Walton was performing unnecessary surgeries, but the indictment was dismissed and not refiled. Among the infirmities that the district court identified were that the grand jury included Muscatatuck employees, there was testimony from a member of the Indiana Attorney General's Medicaid Fraud Unit that Dr. Walton had not engaged in Medicaid theft, and the county prosecutor admitted that, during the grand jury investigation, he had had an affair with a woman who had worked for Dr. Walton. Order Following Bench Trial on Liability at 8–9 (Jan. 29, 1991) (hereinafter "Liability Order").

Walton was invited to apply to Kendrick Memorial Hospital for staff privileges. In addition to being head of the physicians' group, Kendrick was also Chief of the Medical Staff of the hospital, Chairman of the Board of Trustees of the Hospital, and head of the Credentials Committee of the hospital medical staff.

As part of the routine procedure to check a prospective staff doctor's credentials, Louise Swisher, administrator of the Kendrick Hospital, made several telephone calls to the hospitals with which Dr. Walton had previously been associated. Ms. Swisher revealed in her deposition that she had spoken with Robert Kelsey, a hospital administrator in Rochester, Indiana, who told her that Dr. Walton was medically competent but unable to get along with other doctors. Ms. Swisher also spoke with the administrators of hospitals in Madison and Kokomo, Indiana, as well as representatives of the Indiana State Medical Association and the Indiana Hospital Association, all of whom assessed Dr. Walton as medically competent but unable to get along with others. On June 2, 1982, Ms. Swisher spoke with Mr. Vaught. Mr. Vaught told Ms. Swisher that Dr. Walton had resigned from Jennings Hospital under the direction of the hospital attorney, had been indicted for Medicaid theft, and had sexually assaulted a nurse at Jennings Hospital. Ms. Swisher reported these comments, along with comments from other hospital administrators, to Dr. Kendrick. Shortly after this report was made, Dr. Walton was dropped from consideration for membership in the physicians' group by Dr. Kendrick.

### B. District Court Proceedings

#### 1.

Dr. Walton's original complaint was filed on November 19, 1984, and relied on a breach of contract theory. He amended his complaint to allege a second count for tortious interference. The district court granted summary judgment to Mr. Vaught on all counts and summary judgment to Jennings Hospital on the contract count, but denied summary judgment to Jennings Hospital on the tort theory. The case was transferred to another judge, who denied Dr. Walton's motion to amend and granted summary judgment to Jennings Hospital on the tort claim. In *Walton,* 875 F.2d 1317 at 1323–24, this court affirmed the summary judgment on the contract claim, but reversed and remanded on the tort count.

#### 2.

On remand, the district court conducted bifurcated proceedings. It held a bench trial on liability and then a bench trial on damages, although certain remaining liability issues were addressed in the latter phase as well. In the first phase, the court found that Mr. Vaught had indeed been vindictive and malicious toward Dr. Walton. Liability Order at 3, 11. The court found credible the nurse's story that Dr. Walton had sexually assaulted her. *Id.* at 6. The hospital attorney had requested Dr. Walton's resignation after the nurse reported the incident, but Dr. Walton demanded a hearing. Before the issue was resolved internally, however, Dr. Walton announced that he had decided to resign. *Id.* at 7. Negotiations followed that resulted in an agreement that Jennings Hospital would respond to any subsequent inquiries about Dr. Walton by saying that he was not under investigation at the time of his resignation and that his resignation was voluntary. *Id.* at 8. Finally, the court found a number of defects in the Medicaid indictment, which rendered it unworthy of credence. *Id.* at 8–9.[2]

The court ruled that Mr. Vaught's comments to Ms. Swisher regarding the sexual misconduct claim were essentially true and were therefore protected under Indiana's Peer Review Act. The court held, however, that the comments regarding the Medicaid fraud indictment and Dr. Walton's resignation "under the direction of the hospital attorney" were incomplete and misleading and had been made with a malicious purpose.[3] Liability Order at 16, 20. The court further found that, at the time Mr. Vaught made the

---

2. *See supra* note 1.

3. The court also noted that other witnesses had testified that Mr. Vaught had admitted his dislike of Dr. Walton. Liability Order at 16.

comments, the Medicaid indictment had already been dismissed, and Mr. Vaught was well aware that Dr. Walton's resignation had not been accomplished at the direction of the hospital attorney.

In the second phase of the proceedings, the court had to deal with two more issues that bore on liability. First, the court found for the defendants on the tortious interference with a business relationship claim because there was no evidence that Mr. Vaught knew of the existence of the doctors' group, and he would have assumed that Ms. Swisher's call pertained only to staff privileges at the hospital. Order Following Bench Trial on Damages at 5 (Feb. 26, 1992) (hereinafter "Damages Order"). On the claim that Mr. Vaught tortiously interfered with a contractual relationship, the court found that no contract had been extended to Dr. Walton, although the group had invited Dr. Walton to apply for hospital privileges. Consequently, the court held that Dr. Walton's claim for tortious interference with a contractual relationship must fail.

### 3.

These rulings did not end the case, however, because the court granted Dr. Walton's request to amend the complaint to allege a defamation claim. In the district court's view, the parties had squarely addressed the issue as part of the tortious interference with business relationship count. Damages Order at 9. The court noted that, while it had previously found two of Mr. Vaught's remarks to be malicious, the question of proximate cause remained to be settled.

The court first examined the direct evidence of causation offered by Dr. Walton. First, both Drs. Wilson and Donnally, members of Dr. Kendrick's practitioners' group, testified that Dr. Walton was under serious consideration for membership but that his application was dropped some time after they had heard Ms. Swisher say to Dr. Kendrick that she had received information that made Dr. Walton's application unacceptable. *Id.* at 11, 12. Drs. Donnally and Wilson were not privy to Ms. Swisher's report, however. Dr. Donnally told Dr. Walton that Ms. Swisher's information "tipped the scales against him"

and that Ms. Swisher was Dr. Kendrick's confidante. Dr. Donnally also maintained, however, that Dr. Kendrick was the ultimate decisionmaker. *Id.* at 12. He further testified that he thought that Ms. Swisher's information did not make a difference in the final decision because there was a cloud around Dr. Walton that caused concern. *Id.*

Dr. Kendrick testified that Dr. Walton had told him about the difficulties at Jennings Hospital prior to Ms. Swisher's conversation with Mr. Vaught, but that positive references from Dr. McNabb of Jennings Hospital and Dr. Otis Bowen, former governor of Indiana, had allayed his concerns. *Id.* at 13. The physicians' group invited Dr. Walton to apply for staff privileges even though the physicians already knew about the Jennings Hospital situation. *Id.* at 13. Prior to the decision not to extend privileges to Dr. Walton, Ms. Swisher had given Dr. Kendrick her notes regarding her credentials check with Mr. Vaught and five others. The news was not encouraging; the referees spoke of personality and collegiality problems and counselled caution in considering Dr. Walton's application. *Id.* at 13–14. Dr. Kendrick testified that he made the decision not to extend an invitation on his own. He denied that the information conveyed by Mr. Vaught had had any effect on his decision. The court stated unequivocally that it found Dr. Kendrick's testimony believable. *Id.* at 22.

The court concluded that the most likely chronology of events was that Ms. Swisher got a negative report from Howard County, then Mr. Vaught's report, followed by the remaining reports. The court also concluded that the critical conversation between Dr. Kendrick and Ms. Swisher occurred after Ms. Swisher had completed her research. *Id.* at 16. In addition, the court found that, while all of the group doctors had known about the Jennings Hospital situation prior to Ms. Swisher's revelations, Ms. Swisher learned of them first from Mr. Vaught. *Id.* at 22.

The court then considered Dr. Walton's assertion that Ms. Swisher had convinced Dr. Kendrick not to extend privileges on the strength of Mr. Vaught's comments. The court declined to draw this conclusion saying

that to do so would be to conclude that Ms. Swisher's influence over Dr. Kendrick was greater than that of both Dr. McNabb and Dr. Otis Bowen, both of whom had discounted the Jennings Hospital stories. *Id.* at 19. In addition, the court chose to believe Dr. Kendrick when he said that Ms. Swisher did not influence his decision and that the negative reports about Dr. Walton's inability to get along with other doctors were key. Indeed, the court rejected all of Dr. Walton's efforts to cast doubt on Dr. Kendrick's credibility. *Id.* at 21–23. Accordingly, the court held that Mr. Vaught's comments had not proximately caused an injury to Dr. Walton.

### 4.

During the course of the trial proceedings in the district court, the court excluded the portion of Ms. Swisher's deposition testimony (she was unable to testify at trial because she had suffered a debilitating stroke) in which she stated that it was her opinion that Mr. Vaught's information influenced Dr. Kendrick to terminate negotiations with Dr. Walton. Additionally, the district court excluded testimony by personnel from the other hospitals where Dr. Walton had worked that contradicted the information that Ms. Swisher was given on her credential checks. Dr. Walton now appeals from these two evidentiary rulings and from the ruling that Mr. Vaught's comments had not proximately caused Dr. Walton's injury.

## II

## ANALYSIS

### A. *Standard of Review*

■ We review the district court's factfinding under a clearly erroneous standard, but we review the court's legal analysis de novo. Fed.R.Civ.P. 52(a); *Ambrosino v. Rodman & Renshaw, Inc.*, 972 F.2d 776, 784 (7th Cir.1992). If the district court's factual findings are plausible in light of the record, we may not reverse merely because it would have weighed the facts differently. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511–1512, 84 L.Ed.2d 518 (1985); *United States v. Skinner,* 986 F.2d 1091, 1095 (7th Cir.1993).

When a trial judge must choose between testimony giving two versions of the facts that are plausible and uncontradicted by extrinsic evidence, a reviewing court will "virtually never [find] clear error." *Anderson,* 470 U.S. at 575, 105 S.Ct. at 1512. Because, in this diversity case, the district court reached its legal conclusions based on its reading of state law, we must review the decision de novo. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). When legal determinations are based on findings of fact, we accept the district court's findings unless they are clearly erroneous. *Business Records Corp. v. Lueth,* 981 F.2d 957, 959 (7th Cir.1992) (citing *Mucha v. King,* 792 F.2d 602, 605–06 (7th Cir.1986)). We review a trial judge's decision to admit or exclude evidence under an abuse of discretion standard. *Ross v. Black & Decker, Inc.,* 977 F.2d 1178, 1183 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1274, 122 L.Ed.2d 669 (1993); *Nachtsheim v. Beech Aircraft Corp.,* 847 F.2d 1261, 1266 (7th Cir.1988).

### B. *Causation*

#### 1.

■ Indiana law on proximate causation allows for multiple concurrent causes, *Ortho Pharmaceutical Corp. v. Chapman,* 180 Ind. App. 33, 388 N.E.2d 541, 555 (1979), but any given cause must be determined to be a "substantial factor." *Johnson v. Bender,* 174 Ind.App. 638, 369 N.E.2d 936, 940 (1977). In Indiana, the proximate cause of an injury is "the cause that sets in motion the chain of circumstances leading up to the injury." *Federal Deposit Ins. Corp. v. Stanley,* 770 F.Supp. 1281, 1309–10 (N.D.Ind.1991) (citing *New York Central R.R. v. Cavinder,* 141 Ind.App. 42, 211 N.E.2d 502 (1965)). There must be a progression from the act or omission leading "into the [causal] sequence which results in injury." *Stanley,* 770 F.Supp. at 1310 (citing *Tabor v. Continental Baking Co.,* 110 Ind.App. 633, 38 N.E.2d 257 (1941)). "If the defendant's negligence is a substantial factor in producing plaintiff's injury, and if the particular injury suffered is one of a class that was reasonably foreseeable at the time of the defendant's wrongful

act, then there is a causal relation in fact as well as legal cause." *Johnson,* 369 N.E.2d at 939–40.

## 2.

Dr. Walton asserts that the district court's opinion evidences application of the wrong standard of causation. He argues that the court countenanced only one proximate cause and did not admit the possibility that Mr. Vaught's comments might have led to Dr. Walton's injury in concert with other factors.

The district court opinion does include some infelicitous language. Dr. Walton submits that the court's statements at the close of the opinion are particularly troublesome:

> If there had been no problem with medicaid, no problem with the nurse and no need for plaintiff to, for whatever reason, separate from the Jennings County Hospital, then it would not seem so plausible that a history of arrogance and not getting the support of other doctors and a 'personality problem' would tip the scales against plaintiff. The point, however, is that there were such problems and the Court finds that the plaintiff has failed to show by a preponderance of the evidence that the unjustified statements of Vaught were the proximate cause of the failure of plaintiff to get staff privileges.... The evidence supporting the inference that the defamation caused the damage is at best equal to the evidence that it did not. This does not meet plaintiff's burden of proving proximate cause by a preponderance of the evidence. Yet it is the plaintiff's burden to show by a preponderance of the evidence that such a situation has occurred.

Damages Order at 23–24.

Yet, by contrast, the court framed its inquiry in the following manner: "[W]ere these statements the cause, or a proximate cause, of the plaintiff's inability to land a job with any of the entities with whom he applied after leaving his position with Jennings County Hospital?" *Id.* at 10. This statement suggests that the court understood that Mr. Vaught's statements could be actionable if they were not the sole cause of the injury. Later in the same opinion the court was more specific: "Plaintiff properly reminds the Court that more than one proximate cause may contribute to a particular damage." *Id.* at 19.

■ In any event, a more fundamental reason requires that we not accept Dr. Walton's contention that the district court misunderstood the law of proximate cause. Dr. Kendrick testified that Mr. Vaught's communication played no part in his decision. The district court found that testimony credible, *id.* at 22, and there is no basis upon which we can overturn that finding. Any ambiguity in the district court's rendition of its causation analysis is inconsequential in light of the court's firm determination that Dr. Kendrick was telling the truth. Given this credibility finding, Dr. Walton would not have prevailed under *any* causation standard. On a reading of the carefully made factual findings as a whole, only one legal conclusion is possible, the one reached by the district court: Mr. Vaught's comments were neither "*the* proximate cause" nor "*a* proximate cause." [4]

## C. Evidentiary Rulings

■ Dr. Walton protests the exclusion of the portion of Ms. Swisher's deposition that offers her opinion that Mr. Vaught's telephone call convinced Dr. Kendrick that Dr. Walton was an unsuitable candidate for membership in the physicians' group. Because, as we have noted earlier, we must conduct a deferential review of such evidentiary rulings, we conclude that the district court did not err in excluding such testimony on the ground that it was speculative. *See* Fed.R.Evid. 701.[5] While Dr. Walton asserts

---

4. Dr. Walton also takes issue with the district court's "formalistic and overly fastidious standard" in assessing the scienter requirement of the tortious interference claim. *See Flintridge Station Assocs. v. American Fletcher Mortgage Co.,* 761 F.2d 434, 440 (7th Cir.1985) (setting out the elements of the tort). In light of our ruling on the proximate cause issue, we need not reach

the trial court's determination that there was no evidence on the record to show that Mr. Vaught had any knowledge whatsoever of the application to the physicians' group.

5. Federal Rule of Evidence 701 states that
[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions

that a proper foundation was laid for Ms. Swisher's testimony inasmuch as she "was a direct and active participant having substantive input in the employment decision," Appellant's Br. at 37, we must recall that her assessment of Dr. Kendrick's motivation must be suspect because of the court's finding that she did not realize that Dr. Kendrick had been apprised of the Jennings stories long before Mr. Vaught's phone call. Moreover, if the deposition had been admitted into evidence, it could not have carried the day for Dr. Walton because Dr. Kendrick's testimony regarding his motivation, taken on the stand and subject to full cross examination, was directly contradictory. At most, the exclusion of the deposition testimony was harmless error.

■ As for the exclusion of testimony contradicting the telephone reports that Dr. Walton had trouble getting along with his colleagues, we conclude that the district court properly excluded such testimony as irrelevant pursuant to Federal Rule of Evidence 401. Whether the reports made to Ms. Swisher from the other hospitals and agencies were accurate was of no consequence to the district court, which was concerned only with the reports, accurate or not, that played a part in Dr. Kendrick's decision.

### Conclusion

For the foregoing reasons, we affirm the opinion of the district court.

AFFIRMED.

or inferences is limited to those opinions or inferences which are (a) rationally based on a perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.