**James W. RICHARDSON,**
**Plaintiff–Appellant,**

v.

**CONSOLIDATED RAIL CORPORATION,**
**Defendant–Appellee.**

No. 93–2424.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1994.

Decided Feb. 22, 1994.

was an engineer. In the course of a work day, Richardson would use hand brakes on locomotives approximately three times. A hand brake is similar to a foot brake on a car, except it uses a chain instead of a cable. It consists of a wheel (approximately chest high and eighteen inches in diameter) and chain mechanism. The brake is operated by turning the wheel by hand. As the wheel is turned clockwise, the chain gets tighter, which applies the brake against the locomotive wheels; conversely, when the wheel is turned counterclockwise, the chain is loosened and the brake is released from the locomotive wheels. There is a locking device in the brake so that the chain cannot move unless the wheel is turned.

On January 8, 1992, Richardson attempted to release the hand brake (by turning it counter-clockwise) on a locomotive; it stuck after moving several inches. Tr. at 38. When Richardson attempted to release the brake again, "it went out of control, twisting my wrist, bringing me up toward the hand brake, bringing me up toward the hand brake and twisting as well as my body, and lifted my foot in the air." *Id.* Richardson was lifted partially off his feet; he described the movement as "bull dogging a steer." *Id.* at 63–64. There were no witnesses to the incident other than Richardson.

Following the incident, the conductor attempted to work the brake, noting that the wheel "wobbled on the support it was on" and "had a catching, unsmooth motion which is not normal for a brake." *Id.* at 28.

Richardson immediately informed his supervisor, Jim Bondzeleske, that they had "a bad brake." *Id.* at 39. Richardson told Bondzeleske that he twisted his wrist while releasing the brake, but that it was not significant enough to report. *Id.* at 172. Within twenty minutes of the incident, Bondzeleske applied and released the brake; there was nothing wrong with it. *Id.* at 175–177.

Within an hour of the incident, the general foreman, a machinist and a pipefitter inspected the brake. They found nothing wrong with the brake. *Id.* at 205–206; 228–229; Def.'s Ex. 11. On January 3, 1992 (several days prior to the incident), two machinists

Steven M. Crell, Mantel, Cohen, Garelick, Reiswerg & Fishman, Indianapolis, IN, Lawrence A. Katz (argued), Joseph A. Coffey, Patrick T. Henigan, Coffey & Kaye, Bala Cynwyd, PA, for plaintiff-appellant.

Nicholas C. Nizamoff (argued), William C. Ahrbecker, White & Raub, Indianapolis, IN, Thomas J. Wamser, Philadelphia, PA, for defendant-appellee.

Before POSNER, Chief Judge, and FAIRCHILD and FLAUM, Circuit Judges.

FAIRCHILD, Circuit Judge.

In this action, plaintiff James W. Richardson ("Richardson") alleges that defendant Consolidated Rail Corporation ("Conrail") is liable, pursuant to the Federal Safety Appliance Act, 45 U.S.C. § 1, and the Federal Boiler Inspection Act, 45 U.S.C. § 23 et seq., for injuries he sustained while working as a railroad employee. Richardson appeals from a judgment for Conrail, following a jury verdict. We affirm.

## I. BACKGROUND

Richardson worked for Conrail for thirty years; at the time of the incident at issue, he

had inspected the brake, and found nothing wrong with it. Tr. at 238, 260–261; Def.'s Ex. 13. No repairs have been made on the brake, which remains in use on the locomotive. Tr. at 183–184; 271–272.

Following the incident, Richardson saw a number of doctors, and underwent various treatments and therapies. He alleges that he suffered wrist and back injuries. Conrail's medical director has disqualified Richardson from working for Conrail.

## II. DISCUSSION

### A. *Conrail's Evidence Regarding the Hand Brake*

■■■ Richardson argues that the district court erred when it allowed the jury to hear testimony and review inspection records concerning the condition of the hand brake at times other than the time of the incident.[1] Richardson contends that this evidence was irrelevant and prejudicial because the only issue is whether the brake operated properly at the time of the incident. We review the district court's evidentiary rulings for abuse of discretion. *United States v. $94,000.00 in U.S. Currency*, 2 F.3d 778, 788 (7th Cir. 1993).

■■■ The Federal Boiler Inspection Act provides that:

It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb....

45 U.S.C. § 23. This Act imposes " 'an absolute and continuing duty' to provide safe equipment." *Urie v. Thompson*, 337 U.S. 163, 188, 69 S.Ct. 1018, 1033–34, 93 L.Ed.

1282 (1949) (citations omitted). The Federal Safety Appliances Act further provides that:

It shall be unlawful for any common carrier ... to haul, or permit to be hauled or used on its line, any car ... not equipped with ... efficient hand brakes.

45 U.S.C. § 11. A plaintiff need not show that an *improper or unsafe operation was caused by negligence*; proving the improper or unsafe operation "is effective to show negligence as a matter of law." *Urie*, 337 U.S. at 189, 69 S.Ct. at 1034.

Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We conclude that the evidence submitted by Conrail was relevant because it tends to show, contrary to Richardson's testimony, that no improper or unsafe operation occurred.

We do not find the cases relied on by Richardson to be persuasive. In *Anderson v. Baltimore & Ohio R.R. Co.*, the defendant railroad argued that sanders (which release sand through pipes to the rail to prevent a locomotive from slipping) worked properly before and after an accident, and therefore their failure at the time of the accident could not be mechanical, but rather was a result of the sand becoming clogged by rain. 89 F.2d 629 (2d Cir.), *cert. denied*, 302 U.S. 696, 58 S.Ct. 14, 82 L.Ed. 538 (1937). The court concluded that "the failure of the apparatus to function when operated in a proper manner and under normal working conditions [sanders are used when it rains] makes a *prima facie* case of insufficiency...." *Id.* 89 F.2d at 630.

In *Carter v. Atlanta & St. Andrews Bay Ry. Co.*, the Supreme Court stated that "[t]he fact that the coupler functioned properly on other occasions is immaterial" in the context of noting that a railroad is liable if a

---

1. In addition to evidence concerning the brake's operation, Conrail presented general testimony that if a hand brake becomes broken it will not correct itself; it must be repaired. Tr. at 215. One machinist who has worked for Conrail for almost twenty years testified that while it is possible that debris could affect the brake's opera-

tion, he has never seen that happen. Tr. at 221. Another machinist who has worked for Conrail for twelve years has never heard of a brake sticking and then releasing; if the chain would become lodged, it would not allow the brake to be released from the locomotive wheels. Tr. at 240–241.

coupler fails to automatically couple on impact, as was undisputed in that case. 338 U.S. 430, 434, 70 S.Ct. 226, 229, 94 L.Ed. 236 (1949).

Unlike the above cases, however, Conrail disputes that the brake failed to operate properly at the time of the incident. The following cases illustrate how in such a circumstance, evidence of the brake's condition at times other than the accident is relevant.

In *Lewis v. Baker,* the plaintiff was allegedly injured when a hand brake malfunctioned. 526 F.2d 470 (2d Cir.1975). The trial court instructed the jury that it could consider the brake's proper operation prior to and following the incident in order to determine whether the brake functioned properly at the time of the accident. The Second Circuit stated that

> When the state of an object at a particular time is in issue, we have repeatedly upheld the relevancy of evidence of that object's condition before and after the time in question.... [citations omitted] While the weight to be given evidence of prior and subsequent condition differs in each case and is of course a question for the trier of fact, it was proper for the trial judge to tell the jury that they might conclude or presume from that evidence a proper functioning during the interim.

*Id.* at 474–475. *See also Texas and Pacific Ry. Co. v. Griffith,* 265 F.2d 489, 493 (5th Cir.1959) ("The evidence as to the condition before and after the accident is material in enabling the jury to decide whether the plaintiff's testimony as to the brake slipping was credible.").

In *Spotts v. Baltimore & Ohio R.R. Co.,* the defendant railroad produced evidence that a brake operated properly following an accident. 102 F.2d 160 (7th Cir.), *cert. denied,* 307 U.S. 641, 59 S.Ct. 1039, 83 L.Ed. 1522 (1939). The court noted that "[w]here a

jury finds that there is a violation, it will be sustained, if there is proof that the mechanism failed to work efficiently and properly even though it worked efficiently both before and after the occasion in question." *Id.* 102 F.2d at 162. The court also discussed that it is the jury's function to weigh conflicting evidence (i.e. plaintiff's testimony that the brake was used in the normal manner but failed to work efficiently versus railroad's evidence that the brake worked properly after the accident) in determining whether the brake was working efficiently at the time plaintiff was injured. *Id.* at 162–163.

It is true that Conrail would be liable if the hand brake did not properly function at the time of the incident, regardless of whether it worked properly before and after. However, Richardson bears the burden of proving that the hand brake was not working efficiently when he was injured, and his testimony is not conclusive. Because Conrail disputes whether the brake malfunctioned, it is allowed to present evidence of the brake's condition at times other than the incident in order to challenge Richardson's allegations. It was then up to the jury to make determinations of credibility and weigh the evidence in deciding whether Richardson met his burden in proving that the brake did not work efficiently at the time of the incident.

We conclude that the district court did not err in admitting evidence that the hand brake operated properly prior to and after the incident.[2]

### B. *Jury Instructions*

■ Richardson argues that the district court failed to correctly instruct the jury with respect to its determination of whether the hand brake failed to operate properly at the time of the incident.[3] However, Richardson did not object to the court's instructions

---

**2.** Thus, the jury could consider Richardson's description of the manner in which the brake operated when he attempted to release it, the conductor's testimony that the brake "wobbled" and was not moving normally immediately following the incident, and the Conrail employees' testimony that the brake operated properly several days before and shortly after the incident.

**3.** Richardson specifically asserts that the district court did not instruct the jury that "it was immaterial whether the brake worked at any time before or after Mr. Richardson's accident," that "this was not a negligence statute and that neither Conrail's reasonableness nor due care was relevant nor would it relieve it of liability," and "how to determine whether that [absolute] duty was breached." Pl.'s Br. at 21.

at trial; "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict...." Fed.R.Civ.P. 51; *Harrison v. Burlington Northern R.R. Co.*, 965 F.2d 155, 158 (7th Cir.1992).

■ In any event, we will reverse a district court's ruling with respect to jury instructions only " 'if the jury's comprehension of the issues is so misguided that a litigant is prejudiced.' " *United States v. $94,000.00 in U.S. Currency*, 2 F.3d 778, 789 (7th Cir.1993) (citations omitted).[4] We do not perceive how additional instructions would have improved the jury's understanding of the relevant law, and therefore do not find any reversible error.

### C. *Conrail's "Expert" Testimony*

■ Richardson argues that the district court improperly allowed Conrail to call three doctors (who had seen Richardson), to present "expert opinions concerning diagnosis, causation and disability," Pl.'s Br. at 10, because Conrail had not identified the doctors as experts before trial and had not provided information regarding the doctors during discovery. Richardson alleges he was prejudiced because the doctors' depositions were taken after his expert's deposition, and his expert, because he was unavailable after Conrail designated the doctors as experts, could not rebut their testimony.

■ Because the district court has broad discretion regarding whether expert testimony is admissible, we will reverse only if the district court's ruling was " 'manifestly

erroneous.' " *Taylor v. Illinois Central R.R. Co.*, 8 F.3d 584, 585 (7th Cir.1993) (citation omitted). Likewise, a district court's decision to admit non-expert witness testimony is reviewed for an abuse of discretion. *Walton v. Jennings Community Hosp.*, 999 F.2d 277, 282–283 (7th Cir.1993).

We initially note that Richardson and Conrail named the doctors as witnesses.[5] Presumably, Richardson knew the substance of testimony his own potential witnesses would provide. The doctors were deposed more than two months before trial. Richardson does not dispute that Conrail provided him with all the reports and records it obtained from the doctors. Richardson stipulated that the doctors' records were admissible.[6]

■ A doctor is not an "expert" if his or her testimony is "based on ... observations during the course of treating"; if testimony was not " 'acquired or developed in anticipation of litigation or for trial' " and if the testimony is based on personal knowledge. *Patel v. Gayes*, 984 F.2d 214, 218 (7th Cir. 1993) (citation omitted). The district court excluded what it considered to be "expert" testimony by the doctors, and only allowed them to testify as to matters within their personal knowledge. *See e.g.*, Tr. at 97, 100; 103–105; 288–291. Richardson does not make any objections to specific testimony that was allowed.

Finally, both parties agree that the jury found against Richardson with respect to liability and did not address the issue of damages. Pl.'s Br. at 10; Def.'s Br. at 26–27. Therefore, any possible error in allowing the doctors to testify was harmless.

---

**4.** The district court read the pertinent parts of the Federal Boiler Inspection Act to the jury, and instructed the jury that "[a] railroad may be found liable to an employee for a violation of this [Federal Boiler Inspection] Act if the employee sustained injury as a result of a condition of a locomotive that was not safe and proper," that one of the elements of Richardson's complaint is "[t]hat the handbrake of the locomotive was not in a proper condition, safe to operate, when released by the plaintiff on January 8, 1992"; and that "[t]here is no duty on the plaintiff to demonstrate specifically what, if anything, was wrong with the handbrake wheel." Tr. at 414–417.

**5.** In its preliminary witness list, Conrail named two of the doctors, as well as Richardson's treating or consulting physicians and all witnesses named by Richardson. In a subsequent witness list, Conrail named all three doctors. In his preliminary witness list, Richardson named two of the doctors as damages witnesses; the same were identified in his final witness list.

**6.** The parties stipulated that "[c]opies of the medical files, records, tests and reports of plaintiff that have been compiled, prepared or maintained by physicians who examined or treated plaintiff and who will testify at trial are authentic and admissible." May 10, 1993 Stipulations of Fact ¶ 4.

## D. *District Court Bias*

In a footnote, Richardson states that "[i]t is respectfully submitted that the District Court was biased against plaintiff and his counsel." Pl.'s Br. at 20 n. 12. Richardson also states that the district court "has encouraged other parties in other cases to ignore the rules [Federal Rules of Civil Procedure]." Pl.'s Br. at 23. In support of his allegations, Richardson incompletely cites to two statements made by Judge Dillin, while in the process of omitting portions of video depositions pursuant to Richardson's objections, outside the presence of the jury.[7]

A judge's criticism of an attorney does not demonstrate bias. *United States v. Jackson*, 983 F.2d 757, 762 (7th Cir.1993). Our review of the record fails to show either bias or any prejudice to Richardson.

We AFFIRM the judgment of the district court.

---

**7.** Richardson cites to the following:
[T]he redirect [during the deposition of one of the doctors] is mostly speeches by the doctor about what is wrong with the law relating to railroad injuries. I agree with many of his observations. Having been a practicing personal injuries lawyer at one time, I am well aware of the practices of certain long distance firms of attorneys in hustling these cases. But it really has nothing to do with this particular case. So I am just omitting all that.

Tr. at 288–289.
He [one of the doctors who testified for Conrail] is a professional witness. As I said before, gentlemen, I used to be a personal injury lawyer. I know that Conrail—that rather these railroad union lawyers do things that I think are reprehensible. And I also think that Conrail has pet doctors. There isn't any question about that. Now, let's quit kidding each other.
*Id.* at 296.